IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson May 5, 2015

## ALEJANDRO NEAVE VASQUEZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1141      Steve R. Dozier, Judge**

---

**No. M2014-01404-CCA-R3-PC – Filed May 28, 2015**

---

Petitioner, Alejandro Neave Vasquez, was convicted by a jury of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. He received concurrent twenty-year sentences for each count, for a total effective sentence of twenty years in the Tennessee Department of Correction. Petitioner filed a petition for post-conviction relief alleging that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received the ineffective assistance of counsel because trial counsel: (1) failed to utilize an interpreter during all meetings and at trial; (2) advised petitioner not to testify; and (3) failed to adequately explain the school-zone enhancement. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Leah Ruth Wilson, Nashville, Tennessee, for the appellant, Alejandro Neave Vasquez.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Facts

This case stems from a controlled cocaine buy. *See State v. Alejandro Neave Vasquez and Nazario Araguz*, No. M2010-02538-CCA-R3-CD, 2012 WL 5989875, at *1

(Tenn. Crim. App. Nov. 28, 2012). The police planned for an informant to ask for a kilogram of cocaine from a source but then return the cocaine to the source, claiming that it was impure, so that the police could follow the cocaine back to what they called a "stash house." *Id.* The police observed two Hispanic men arrive at the buy location in a Volkswagen Jetta, bring cocaine to the informant, and then leave the location with the cocaine. *Id.* at *1-2. The police followed the Jetta to an apartment complex and watched as the driver removed a dark-colored block from the trunk and placed it in a white bag. *Id.* at *3. The Jetta was driven to a gas station, where the driver removed the white bag from the Jetta and placed it in a Tahoe. *Id.* at *2-4. The Tahoe was driven by co-defendant Jose Aragus. *Id.* at *4. Aragus drove the Tahoe to a home on Strand Fleet Drive. *Id.* Thereafter, petitioner and co-defendant Nazario Araguz arrived at the Strand Fleet Drive house in a brown Ford F-150 with a license plate reading, "Araguz." *Id.* The police observed petitioner carrying a white bag that he placed in the engine compartment of the F-150. *Id.* Petitioner and Araguz then left Strand Fleet Drive in the F-150. *Id.* The police stopped petitioner and Araguz on Richards Road after having driven past an elementary school. *Id.* at *2, *4-5. The police recovered a block of cocaine from the engine compartment of the truck, as well as approximately $123,000 from the interior of the truck. *Id.* at *2. Subsequently, petitioner was indicted, tried, and convicted of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. *Id.* at *1. Petitioner unsuccessfully appealed his convictions to this court. *Id.* at *7-14.

Petitioner filed a timely petition for post-conviction relief, and the evidentiary hearing occurred on June 26, 2014.

At the hearing, petitioner stated that he did not speak English very well and that at trial, he did not have an interpreter, so he was unable to understand the testimony. Petitioner asserted he made the decision not to have an interpreter at trial after trial counsel told him that it would "look bad" if he did not understand English. Petitioner explained that he did not testify at trial due to trial counsel's opinion that the District Attorney was racist. Petitioner asserted that he would have testified if trial counsel had not advised against it. After being asked if he had an interpreter during meetings with his attorney, petitioner responded, "Sometimes I did have an interpreter; other times I did not." Petitioner stated that trial counsel had explained his charges to him but that he did not understand the ramifications of the school-zone enhancement or the requirement of serving the imposed sentence at one hundred percent.

During cross-examination, petitioner explained that if he had testified, he would have told the jury that he had "never touched a drug" and that he did know to whom the drugs belonged. Petitioner denied putting the drugs in the vehicle and denied seeing any money inside of the truck.

Trial counsel testified that when he met petitioner, petitioner had been living in the United States for seventeen years and spoke some English. Trial counsel explained that an interpreter was present when he met with petitioner at the jail on June 26, 2009, and that he made a note to himself stating that petitioner's English was "a lot better than he is letting me believe." Trial counsel stated that at that meeting, he and the interpreter explained the indictments and the ranges of punishment. Subsequently, trial counsel met with petitioner again, with an interpreter, and trial counsel noted that petitioner spoke English "well." Trial counsel asserted that he was able to effectively communicate with petitioner in meetings in which there was no interpreter present. Trial counsel and petitioner discussed various aspects of the case. Trial counsel stated that he had no trouble communicating with petitioner in English during trial and that he believed that petitioner understood the conversations. Trial counsel explained that he advised petitioner against testifying because he did not want petitioner to have to concede that he was connected to the money in the truck. Trial counsel stated that petitioner admitted to him that he had been collecting the money from various sources earlier in the day. Trial counsel claimed that the more effective strategy was to argue that the money was not visible from the passenger seat, where petitioner was sitting, thereby weakening the link between petitioner and the money. In response to a question regarding why petitioner thought that the prosecutor was racist, trial counsel testified that when the State failed to offer or accept a plea bargain, he told petitioner that the most likely explanation was that the District Attorney was "sending a message to the Mexican/Spanish drug dealer, cartel-type folks that if you send . . . large quantities of cocaine into Nashville, Tennessee, you can expect to get a pretty harsh sentence." Trial counsel denied telling petitioner that the prosecutor was racist and denied telling petitioner that if he testified, his race would affect the outcome of the trial. Regarding the school-zone enhancement, trial counsel explained that he discussed the enhancement with petitioner, both with and without an interpreter, and that they examined various maps of the route taken on the day of the arrest. Trial counsel testified that he had spent a minimum of fifty hours working on petitioner's case.

During cross-examination, trial counsel stated that he had numerous conversations with petitioner about whether petitioner was going to testify. When asked if petitioner ever asked for an interpreter during meetings or at trial, trial counsel explained that at one of the meetings, he confronted petitioner about the "no habla ingles scenario" when he and petitioner "did not have a problem communicating in English" and that he could not think of a reason that he would have denied petitioner an interpreter at trial if petitioner had requested one.

The post-conviction court denied post-conviction relief on July 11, 2014, by written order. In doing so, the court found credible trial counsel's testimony that petitioner understood English and that petitioner did not need an interpreter. The trial court determined that trial counsel had discussed the charges, the applicable range of

punishment, and petitioner's right to testify on multiple occasions. The post-conviction court determined that petitioner had failed to show that trial counsel was ineffective in his representation of petitioner. This appeal follows the post-conviction court's denial of relief.

## II. Analysis

Petitioner argues that trial counsel was ineffective for: (1) failing to utilize an interpreter during all meetings and at trial; (2) advising petitioner not to testify; and (3) failing to adequately explain the school-zone enhancement. The State responds that trial counsel was not ineffective in his representation of petitioner. We agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was

deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

"[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner has failed to show that trial counsel's performance was deficient or that trial counsel's performance caused him to suffer prejudice at trial. Trial counsel testified that he met with petitioner multiple times, both with and without an interpreter. At these meetings, trial counsel discussed the indictments, the ranges of punishment, the facts of the case, the school-zone enhancement, and other various aspects of the case. Trial counsel explained that he was able to effectively communicate with petitioner without an

interpreter and that petitioner understood English to a greater extent than his actions indicated. The post-conviction court credited trial counsel's testimony in this regard, and we will not reweigh or reevaluate credibility determinations on appeal. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S.*, 245 S.W.3d at 362). Accordingly, petitioner has failed to show that trial counsel was deficient by not utilizing an interpreter during all meetings and at trial and by failing to explain the school-zone enhancement.

Regarding petitioner's assertion that trial counsel was ineffective for advising him not to testify, trial counsel explained that he so advised petitioner due to petitioner's admission that he was connected to the money seized from the vehicle. Trial counsel explained that his trial strategy was to show that based on the money's location in the truck, it was not visible to petitioner, thereby weakening the link between petitioner and the money. This court does not second guess strategic and tactical choices made by trial counsel. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (quoting *United States v. DeCoster*, 487 F.2d 1197, 1201 (D.C. Cir. 1973)). Only when those strategic choices are uninformed based on inadequate preparation does a defendant receive the ineffective assistance of counsel. *Id.* However, there is no indication that trial counsel's strategy was from a lack of preparation, but rather, it was a product of his preparation. Furthermore, the post-conviction court in this case found that trial counsel had discussed with petitioner the petitioner's right to testify and that trial counsel thoroughly questioned petitioner about his right to testify during a hearing. Petitioner has failed to show that trial counsel was deficient in this regard; therefore, petitioner is not entitled to relief.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE